Prior to entry of the Opinion and Award herein, the Deputy Commissioner entered an Interlocutory Opinion and Award. One portion of the Interlocutory Opinion and Award contained in pertinent part the following "Order" section:
ORDER
1. The parties shall have 60 days from the date of this Interlocutory Opinion and Award within which to depose the medical experts in order to determine the extent of plaintiff's period of disability as a result of the compensable accident on April 12, 1990, and the resulting seizure disorder. By means of further depositions, the parties shall also provide sufficient evidence to determine whether plaintiff's disability is causally related to the seizure disorder or the depression.
2. Within the same 60 days, the parties shall submit stipulations as to the periods during which plaintiff worked for defendant-employer, including the last day that she worked.
The plaintiff thereafter obtained deposition testimony from Dr. Ellis F. Muther on May 9, 1995 and Dr. Cynthia R. Lopez on May 18, 1995. Defendants objected to the deposition testimony of Dr. Muther. The Deputy Commissioner sustained the defendants' objection to causation testimony of Dr. Muther. By Order of the Full Commission filed on May 22, 1996, the deposition testimony of Dr. Muther was admitted into evidence. The Full Commission further reopened the record and ordered the parties to submit evidence on the following issue: "[W]hether the plaintiff's depression was caused, materially exacerbated or accelerated as a consequence of the compensable injury." Thereafter, the parties deposed Dr. Lubica P. Fedor.
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the additional evidence allowed into the record by the Full Commission. The appealing party has shown good grounds to reconsider the evidence and to reopen the record to receive further evidence. The Full Commission REVERSES in part and AFFIRMS in part the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner, and in Industrial Commission Form 21, approved by the Commission on May 24, 1990, and in a Pre-Trial Agreement dated January 6, 1994, as
STIPULATIONS
1. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. At such time, an employment relationship existed between plaintiff and defendant-employer.
2. Liberty Mutual Insurance Company was the compensation carrier on the risk.
3. Plaintiff's average weekly wage was $292.00, yielding a compensation rate of $194.68 per week.
4. On April 12, 1990, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer.
5. Pursuant to the Form 21 Agreement approved by the Commission on May 24, 1990, plaintiff was paid temporary total disability compensation by defendant-employer and received the last payment on September 23, 1990.
6. Pursuant to the Form 26 Agreement approved by the Commission on December 5, 1990, plaintiff was paid permanent partial disability compensation beginning September 24, 1990, at the rate of $194.68 per week for 20 weeks for the 10 percent permanent functional impairment she sustained to her left wrist as a result of the compensable accident.
7. Plaintiff's medical records were stipulated into evidence.
8. Plaintiff's Answers to Interrogatories were stipulated into evidence as Stipulated Exhibit 1.
RULINGS ON EVIDENTIARY MATTERS
The Deputy Commissioner's ruling on defendants' objection to the deposition testimony of Dr. Muther is VACATED. The deposition testimony of Dr. Muther is ADMITTED.
* * * * * * * * * * * * * * * * * *
Based upon all of the competent evidence adduced from the record herein, the Full Commission finds as follows:
FINDINGS OF FACT
1. At the time of the hearing in this matter before the Deputy Commissioner, the plaintiff was forty-one years old. She was a high school graduate and had worked for defendant-employer for approximately 3 years as a dairy and frozen food manager.
2. Plaintiff's average weekly wage was $357.98, yielding a compensation rate of $238.67.
3. On April 12, 1990, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer when crates of milk fell from a height of approximately 5 feet, hitting her on the left side of her neck and the left side of her head. Plaintiff raised her arm to block part of the blow from some of the crates as they fell causing injury to her left hand. The crates of milk were packed with four 1-gallon containers of milk and weighed approximately 30 pounds each. At the time plaintiff was struck by the crates of milk, she was bent over in a crouched position removing Saran Wrap from the crates.
4. After the compensable accident, plaintiff was treated at a local urgent care center. She was dazed but suffered no loss of consciousness.
5. Prior to her injury, plaintiff had been treating with Dr. Kornegay for problems diagnosed primarily as hypertension, anemia, headaches and hypothyroidism. These problems did not disable plaintiff from work. Within a few days after her injury, plaintiff began to again complain of headaches which were accompanied by blurred vision. Plaintiff also complained of chest discomfort. Based on the greater weight of the evidence, plaintiff's headaches are not causally related to her injury by accident.
6. On August 9, 1990, plaintiff first suffered a grand mal seizure, for which she was hospitalized for several days. She received medical treatment from Dr. William Deans, a neurologist, who prescribed medication to attempt to control the seizures. Plaintiff had no prior history of seizure disorder, but some members of her family had suffered seizures.
7. Plaintiff continued to work for defendant-employer on an intermittent basis until approximately the end of October, 1991, at which time she was unable to work due to seizures and depression. There is insufficient evidence of record from which to determine the actual days worked and the last day she worked for defendant-employer, therefore, October 30, 1991 is found to be the last day plaintiff worked for defendant-employer.
8. Since July 15, 1991, plaintiff has been treated by Dr. Cynthia Lopez, a neurologist, for her seizure disorder. While treating with Dr. Lopez, plaintiff had an average of two seizures per month, during which she would lose consciousness and become rigid all over, with a wave of rhythmic jerking movements in her limbs and trunk. Plaintiff also experiences an aura of blood prior to the onset of the seizure, which is consistent with temporal lobe seizures.
9. Plaintiff continued to have seizures during the period from July, 1991 through January, 1995 when she was being treated by Dr. Lopez even though she was taking anticonvulsive medication as well as a number of other types of medication. Dr. Lopez switched her anticonvulsant medication a number of times. On or about March 8, 1994, Dr. Lopez placed plaintiff on Felbatol, a newly released drug, and entered plaintiff into a Felbatol study group which required weekly monitoring. Plaintiff was also being treated by a psychiatrist for depression during this time and was taking medication for depression. At her August 17, 1994 visit with Dr. Lopez, plaintiff reported three seizures in the prior week and urinary incontinence. Plaintiff experienced a reduction in seizures while taking Felbatol, but had other side effects.
10. Dr. Lopez was of the opinion that plaintiff's seizure disorders alone would not have prevented her from working but could not express an opinion on plaintiff's ability to work considering the combined effect of her seizure disorders and depression. Dr. Lopez last treated plaintiff in January, 1995.
11. In approximately October of 1990, plaintiff began experiencing severe depression for which she has been hospitalized a number of times, beginning in November, 1991.
12. Plaintiff has a family history of seizure disorder. However, there is insufficient evidence in the record from which to prove by its greater weight that her seizure disorder is causally related to the family history of seizures. Based upon the greater weight of the opinion testimony by medical experts, her seizure disorder is causally related to the injury by accident arising out of and in the course of her employment on April 12, 1990. Dr. Ellis F. Muther who is board certified in psychiatry and practices in the areas of neurology and psychiatry opined that plaintiff suffered from major depression; that there is a causal relation between plaintiff's seizure disorders and her depression; that plaintiff's major depression and seizure disorders disabled her from gainful employment; that epileptic types of disorders can cause major mood changes including depression and that typical hereditary or idiopathic epilepsy generally has its onset before age 25 to 30. (Dr. Deans also agrees that hereditary epilepsy generally occurs between ages 25 to 30.) Plaintiff was 38 years old at the time she experienced her first seizure.
13. Dr. Lubica P. Fedor, a medical doctor specializing in psychiatry began treating plaintiff in September, 1992 upon a psychiatric referral from Coastal Plain Psychiatric Hospital. Dr. Fedor opined that plaintiff's depression is very closely related to her seizure disorder; that plaintiff's depression was either caused, by or materially exacerbated or accelerated by her April 12, 1990 compensable injury; that medication used to treat plaintiff's seizure disorder has contributed to plaintiff's mood disorders or depression and that plaintiff is disabled from working due to a combination of depression and seizure disorder. Plaintiff did not have a pre-existing history of depression.
14. Plaintiff has been unable to work since October 30, 1991 as a result of her seizure disorder and depression. Based upon the greater weight of the evidence, plaintiff's seizure disorder and depression are causally related to her compensable injury by accident.
15. Greater weight is accorded to the medical opinion of Dr. Fedor and Dr. Muther on the causal connection between plaintiff's seizure disorder and her April 12, 1990 injury, the causal connection between plaintiff's depression and seizure disorder, and, on the question of plaintiff's incapacity to work caused by her seizure disorder and depression.
* * * * * * * * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's disability since October 30, 1991 is causally related to the compensable injury on April 12, 1990, and the resulting seizure disorder and depression. Therefore, plaintiff is entitled to additional compensation for temporary total disability. N.C. Gen. Stat. §§ 97-2 (6); 97-29.
2. As a result of her seizure disorder and resulting depression, plaintiff has been temporarily totally disabled from October 30, 1991 through the date of hearing and continuing. Plaintiff is entitled to temporary total disability compensation from October 30, 1991 through the date of hearing and continuing. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to payment of all medical expenses by defendant-employer as a result of her compensable injury on April 12, 1990, and the resulting depression and seizure disorder for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, or give relief, and will tend to lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
* * * * * * * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the rate of $194.68 per week from October 30, 1991 through the date of hearing and continuing until further Order of the Industrial Commission.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury on April 12, 1990, and the resulting seizure disorder and depression for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, or give relief, and will tend to lessen plaintiff's period of disability when bills have been submitted and approved according to procedures established by the Commission.
3. An attorney's fee of 25% of the compensation due plaintiff herein is approved for plaintiff's attorney and shall be deducted and paid directly to plaintiff's attorney. Every fourth check of future compensation due plaintiff shall also be paid to plaintiff's attorney.
4. Defendants shall pay the costs due this Commission.
 S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________ J. RANDOLPH WARD COMMISSIONER
S/ _____________ COY M. VANCE COMMISSIONER
BSB:md